IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

ELI BROWN, III,                            )
                                           )
        Plaintiff,                         )
                                           )
v.                                         )      CASE NO. 3:20-cv-944-JTA
                                           )
KILOLO KIJAKAZI,                           )      (WO)
Acting Commissioner of Social Security,    )
                                           )
        Defendant.                         )

**MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), the claimant, Eli Brown III ("Brown"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Brown's application for a period of disability and disability insurance benefits ("DIB"). The Court construes Brown's brief in support of his Complaint (Doc. No. 18) as a motion for summary judgment and the Commissioner's brief in opposition to the Complaint as a motion for summary judgment (Doc. No. 20). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 9, 10.)

After careful scrutiny of the record and the motions submitted by the parties, the Court finds that Brown's motion for summary judgment is due to be DENIED, the

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

Commissioner's motion for summary judgment is due to be GRANTED, and the decision of the Commissioner is due to be AFFIRMED.

## I.     PROCEDURAL HISTORY AND FACTS

Brown was 58 years old at the time of the alleged disability onset date. (R. 25.)[2] He is college-educated and previously worked as a supervisor for medical support assistance (unit clerk), truck driver, ammunitions handler, junior ROTC instructor (teacher), and combat life save instructor. (R. 24-25, 41-45, 58.) He alleged a disability onset date of January 31, 2019, due to posttraumatic stress disorder ("PTSD") and depression. (R. 175.)

On February 5, 2019, Brown protectively applied for a period of disability and DIB under Title II (42 U.S.C. §§ 401, *et seq*.). (R. 158, 174-184.) The application was denied, and Brown requested an administrative hearing. (R. 15, 95-96.)

Following an administrative hearing, the Administrative Law Judge ("ALJ") denied Brown's request for benefits in a decision dated May 20, 2020. (R. 12-26.) Brown requested additional review from the Appeals Council, and it denied his request. (R. 1-6.) Thus, the hearing decision became the final decision of the Commissioner.[3]

On November 16, 2020, Brown filed a civil action to review the final administrative decision of the Commissioner of Social Security. (Doc. No. 1.) The parties have briefed their respective positions. (Docs. No. 18, 20, 25.) This matter is ripe for review.

---

[2] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 21.)

[3] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

## II.    STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the Commissioner

for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

### III.   STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB must prove that he is disabled. *See* 20 C.F.R. § 404.1505. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The evaluation is made at the hearing conducted by an administrative law judge ("ALJ"). *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant meets or medically

equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV. ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ found that Brown has not engaged in substantial gainful activity since January 31, 2019, the onset date of disability. (R. 17.) The ALJ also found that Brown suffers from the following impairments that significantly limit his ability to perform basic work activities: PTSD, diabetes, obesity, minimally displaced fracture through the proximal fibula, shoulder disorder, cervicalgia,

and lumbar spine disorder. (R. 17.) The ALJ made no findings of non-severe impairments. The ALJ concluded that Brown's impairments do not meet or medically equal the severity of impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18.)

After consideration of the entire record, the ALJ determined that Brown retains the RFC to perform medium work[4] as defined in 20 C.F.R. § 404.1567(c), except with the following limitations:

> … [Brown] can occasionally reach overhead to the left and to the right; is able to perform simple, routine, and repetitive tasks; is able to perform simple work-related decisions; is able to tolerate few changes in a routine work setting, defined as performing the same duties at the same station or location day to day; can have occasional interaction with supervisors; can have occasional contact with co-workers with no tandem tasks or team-type activities; and can have no contact with the public.

(R. 20.)

Based upon the testimony of a vocational expert ("VE"), the ALJ determined that Brown was precluded from performing any past relevant work. (R. 24-25.) The ALJ also found that based upon Brown's age, education, work experience and RFC, there are jobs that exist in "significant numbers in the national economy" that he can perform, and therefore he was not disabled as defined by the Act. (R. 25.) The ALJ further found that Brown could work as a hand packager, salvage laborer, or a warehouse worker. (R. 25-26.) The ALJ concluded that Brown had not been under a disability from January 31, 2019, through May 20, 2020, the date of the ALJ's decision. (R. 26.)

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

# V.    DISCUSSION

On appeal, Brown raises three arguments. (Doc. No. 18.) First, he argues the ALJ failed to properly evaluate the medical opinion evidence in determining his RFC. Second, he argues the ALJ's credibility assessment is defective due to improper evaluation of the medical opinion evidence and failure to consider his stellar work history. Third, he argues the final decision of the Commissioner is constitutionally defective because of a separation of powers violation.

The Court addresses each argument below.

## A.    The ALJ properly evaluated the medical opinions in determining the RFC.

Brown argues the ALJ improperly evaluated the medical opinions in determining his RFC because the ALJ analyzed the medical opinions and administrative finding in isolation from each other. Brown contends the medical opinions of Kevin McPherson, M.D. ("Dr. McPherson"), his treating psychiatrist, and M. Quinn Roper Wulff, EdD. ("Dr. Wulff"), his counselor, and the administrative medical findings are consistent with one another and are consistent with and supported by the evidence. Brown also contends the ALJ improperly discounted the opinions of Drs. McPherson and Wulff by erroneously relying on one progress note in April 2019 to find their opinions unpersuasive. Brown notes that Dr. Robert Estock, a state agency consultant, opined during the administrative determination that he would "likely miss 1-2 days per month due to psych symptoms"[5] and argues that the ALJ was selective in her consideration of the medical record. Finally,

---

[5] (*See* R. 72.)  Dr. Estock concluded at the initial level that Brown was not disabled.  (R. 74.)

Brown argues the ALJ inappropriately relied on his daily activities on his best days in determining his RFC.

The ALJ considers medical opinions from acceptable medical sources, which include licensed physicians and licensed psychologists. 20 C.F.R. § 404.1502(a). The regulations define a medical opinion as

> … a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [the claimant] [has] one or more impairment-related limitations or restrictions in the following abilities:
>
> (i) [His] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) [His] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) [His] ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) [His] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). The regulations direct the ALJ to "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

> When a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors [the ALJ] considers when … evaluat[ing] the persuasiveness of medical opinions and prior

administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)….

20 C.F.R. § 404.1520c(a).

The regulations direct the ALJ to evaluate the persuasiveness of each medical source using the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization of the medical source, and (5) other factors. 20 C.F.R. § 404.1520c(1)(c). The ALJ must explain in her decision how she considered the factors of supportability[6] and consistency[7] in her determination of overall persuasiveness of each source. 20 C.F.R. § 404.1520c(b)(2) ("[S]upportability ... and consistency ... are [t]he most important factors we consider when we determine how persuasive we find a medical source's opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision."). "When weighing medical opinion evidence, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether an opinion is well-supported, and whether an opinion is consistent with the record." *Wines v. Acting Comm'r of Soc. Sec.,* No. 21-13606, 2022 WL 2526586, at *3 (11th Cir. July 7, 2022).

---

[6] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[7] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

The persuasiveness analysis should turn on whether "the medical source's opinion is (1) supported by the source's own records and (2) consistent with other evidence of record." *Podeszwa v. Kijakazi,* No. 3:21-CV-223-JTA, 2022 WL 4357434, at *7 (M.D. Ala. Sept. 20, 2022) (citation and internal quotation marks omitted). The ALJ is not required to explain how she considered the remaining factors unless she finds two or more medical opinions are equally well-supported and consistent with the record but are not exactly the same. *Gogel v. Comm'r Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *6 (M.D. Fla. Sept. 20, 2021).

In addition to assessing a claimant's medical evidence, an ALJ is responsible for determining a claimant's RFC. *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016) (citation omitted). "Although a claimant may provide a statement containing a physician's opinion of [his] remaining capabilities, the ALJ evaluates such a statement in light of the other evidence presented." *Wines*, 2022 WL 2526586, at *2 (citing 20 C.F.R §§ 404.1527(d), 404.1545(a)(3)).

A claimant's RFC is an administrative finding as to the most the claimant can do despite his limitations and is based on <u>all</u> the relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238. "Once the ALJ has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence." *Talton v. Kijakazi*, No. CV 20-00543-B, 2022 WL 822158, at *6 (S.D. Ala. Mar. 17, 2022) (citing *Flynn v. Heckler*, 768 F.2d 1273, 1274 (11th Cir. 1985)).

"Substantial evidence" is more than a mere scintilla and is "such relevant evidence[8] as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec. Admin.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346,1349 (11th Cir. 1997)). If the ALJ's determination of the claimant's RFC is supported by substantial evidence, then the court cannot overturn the conclusion reached by the ALJ. *Shue v. Comm'r of Soc. Sec.*, 817 F. App'x 906, 908 (11th Cir. 2020) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)); *see also* 42 U.S.C. § 405(g).

The state agency denial of Brown's application for DIB includes a mental RFC Assessment completed by Dr. Estock.[9] (R. 70-72.) Dr. Estock opined that Brown had understanding and memory limitations, sustained concentration and persistence limitations, social interaction limitations, and adaption limitations.  (R. 70-72.) Dr. Estock opined that Brown was either "moderately limited"  or "not significantly limited" in all categories.  Dr. Estock further opined, in pertinent part:

> [Brown] would be expected to understand, remember, and carry out short simple instructions and tasks but would likely have difficulty with more detailed tasks and instructions.

> [Brown] would likely have trouble with more detailed tasks and instructions. [He] would be expected to maintain attention and concentration for 2 hours with all customary rest breaks.  A well-spaced work environment would be best for maximum concentration.  [Brown] would likely miss 1-2 days/month due to psych symptoms.

---

[8] Even where the ALJ may have based the RFC on all relevant evidence, she is not required to discuss every piece of evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

[9] State agency medical or psychological consultants are considered experts in social security disability evaluation, and the ALJ must consider and assign weight to their opinions in the same manner as other medical sources. *See* 20 C.F.R. § 404.1527(c), (e).

(R. 72.) Dr. Estock concluded that Brown was not disabled.  (R. 74.)

The ALJ discussed Dr. Estock's opinion in the hearing decision, stating that she "finds this opinion partially persuasive." (R. 23.)  The ALJ stated:

> Dr. Estock noted a diagnosis of PTSD and noted anxiety, nervousness, nightmares, and reported difficulties with mood, motivation, and interactions with co-workers, which supports the opinion that [Brown] has non[-]exertional mental limitations.… However, an April 10, 2019 record indicated that [Brown] had no manic or psychotic thoughts and also indicated that on exam, [Brown] was awake, alert, and oriented x 4, had friendly, open attitude, felt mostly okay and was sleeping better, had normal speech rate, had logical, linear, goal-directed thought process, had no noted auditory or visual hallucinations, had good judgment and insight, had intact impulse control, and had no deficits noted with cognitive capacity…. This evidence is not consistent with the degree of opined limitations by Dr. Estock, such as the opinion that [Brown] would likely miss 1-2 days/month due to psychological symptoms.

(R. 22-23.)

As to the opinions of Drs. McPherson and Wulff, the ALJ did not address their medical opinions by name but discussed them nonetheless in determining the RFC. The ALJ addressed Dr. Wulff's Medical Source Statement of Ability to Do Work-Related Activities (Mental) and found it unpersuasive, stating:

> The undersigned considered the February 11, 2020 opinion found in Exhibit 8F. The opinion in Exhibit 8F indicated that [Brown] has various non-exertional mental limitations, such as marked limitations in understanding and remembering short, simple instructions, marked limitations in the ability to make judgments on simple work-related decisions, marked limitations in interacting appropriately with supervisors and co-workers, extreme limitations in responding appropriately to changes in a routine work setting, moderate limitations in carrying out short, simple instructions, and extreme limitations in understanding and remembering detailed instructions and carrying out detailed instructions (Exhibit 8F). The undersigned finds this opinion unpersuasive. The medical source statement in Exhibit 8F indicated that [Brown] significantly struggles with memory, cognitive abilities, and lack of impulse control; is suspicious of others; has short temper; experienced

> depression and low self-esteem; and does not handle criticism well, which
> supports the opinion that [Brown] has non[-]exertional mental limitations
> (Exhibit 8F).

(R. 23.) The ALJ compared Dr. Wulff's opinion in the Medical Source Statement of Ability

to Do Work-Related Activities (Mental) to an April 10, 2019 record from Dr. McPherson

that indicated Brown

> had no manic or psychotic thoughts and also indicated that on exam, [Brown]
> was awake, alert, and oriented x 4, had friendly, open attitude, felt mostly
> okay and was sleeping better, had normal speech rate, had logical, linear,
> goal-directed thought process, had no noted auditory or visual hallucinations,
> had good judgment and insight, had intact impulse control, and had no
> deficits noted with cognitive capacity (Exhibit 4F, page 3).

(R. 23.) The ALJ stated, "This evidence suggests that [Brown] retained functional abilities

and is not consistent with the degree of opined limitations in Exhibit 8F, such as the opinion

that [Brown] has extreme limitations in responding appropriately to changes in a routine

work setting and has marked limitations in interacting appropriately with supervisors and

co-workers." (R. 23.) The ALJ "accounted for the combination of [Brown]'s impairments

and symptoms, such as irritability, anxiety, cognitive issues, and mood swings, with the

limitations in the [RFC], which include non[-]exertional mental limitations." (R. 23.)

Similarly, the ALJ addressed Dr. McPherson's Medical Source Statement of Ability

to Do Work-Related Activities (Mental) and found it unpersuasive, stating:

> the undersigned considered the February 5, 2020 opinion found in Exhibit
> 7F. The opinion in Exhibit 7F indicated that [Brown] has various non-
> exertional mental limitations, such as marked limitations in understanding
> and remembering detailed instructions, moderate limitations in
> understanding and remembering short, simple instructions, marked
> limitations in interacting appropriately with co-workers, and marked
> limitations in responding appropriately to changes in a routine work setting
> (Exhibit 7F). The undersigned finds this opinion unpersuasive. The medical

13

source statement in Exhibit 7F indicated that [Brown] has continued anxiety, agitation, and memory and focus problems as well as ongoing difficulty in interpersonal interaction, which supports the opinion that [he] has non[-]exertional mental limitations (Exhibit 7F, pages 1-2).

(R. 23-24.) However, the ALJ used the same April 10, 2019 record from Dr. McPherson

to discount Dr. McPherson's Medical Source Statement of Ability to Do Work-Related

Activities (Mental), stating:

> However, an April 10, 2019 record indicated that [Brown] had no manic or psychotic thoughts and also indicated that on exam, [Brown] was awake, alert, and oriented x 4, had friendly, open attitude, felt mostly okay and was sleeping better, had normal speech rate, had logical, linear, goal-directed thought process, had no noted auditory or visual hallucinations, had good judgment and insight, had intact impulse control, and had no deficits noted with cognitive capacity (Exhibit 4F, page 3). This evidence suggests that [Brown] retained functional abilities and is not consistent with the degree of opined limitations in Exhibit 7F, such as the opinion that [Brown] has marked limitations in responding appropriately to changes in a routine work setting and has marked limitations in interacting appropriately with co- workers. The undersigned accounted for the combination of [Brown]'s impairments and symptoms, such as irritability, anxiety, cognitive issues, and mood swings, with the limitations in the [RFC], which include non[-]exertional mental limitations.

(R. 24.)

> The ALJ concluded that her RFC finding was supported by the record, stating:

> The record contains evidence of various impairments, such as PTSD, lumbar spine disorder, shoulder disorder, and diabetes, as noted above. The undersigned accounted for the combination of [Brown]'s impairments and symptoms, such as pain, mood swings, irritability, anxiety, and cognitive issues, with the limitations in the above residual functional capacity, which include a limitation to work at the medium level with additional manipulative and noexertional [sic] mental limitations. However, the undersigned does not find further limitations are warranted, as the record indicates that [Brown] retained the functional abilities in the above residual functional capacity. For example, a June 17, 2019 exam indicated that [Brown] was in no acute distress, had no paresthesia, and had full range of motion of the extremities (Exhibit 10F, page 135). Further, an April 3, 2019 exam indicated that [Brown]   was in no acute distress, had no muscle atrophy, had intact

14

> sensation to light touch and pin-prick in all dermatomes, had no edema in the extremities, had a negative straight leg raise test bilaterally, and had 5/5 motor strength in the upper and lower extremities bilaterally (Exhibit 10F, pages 189-190). Also, an April 10, 2019 record indicated that [Brown] had no manic or psychotic thoughts and also indicated that on exam, [Brown] was awake, alert, and oriented x 4, had friendly, open attitude, felt mostly okay and was sleeping better, had normal speech rate, had logical, linear, goal-directed thought process, had no noted auditory or visual hallucinations, had good judgment and insight, had intact impulse control, and had no deficits noted with cognitive capacity (Exhibit 4F, page 3). Additionally, in a February 18, 2019 Function Report, [Brown] reported that he watches television, is able to count change and use a checkbook, drives, prepares his own meals, folds laundry, and does light cleaning (Exhibit 4E).

(R. 24.)

Brown has not satisfied his burden of demonstrating that the ALJ's RFC decision is not supported by substantial evidence.[10] The ALJ conducted a thorough review of the medical evidence, articulated how she considered the supportability and consistency factors, and reached a decision based on a detailed consideration of <u>all</u> the medical evidence. The ALJ properly evaluated the statements of Drs. Estock, McPherson and Wulff concerning his capabilities "in light of the other evidence presented." *See Wines*, 2022 WL 2526586, at *2. In addition, the ALJ properly considered the opinions of Drs. Estock, McPherson and Wulff, and articulated reasons supported by substantial evidence for finding their opinions unpersuasive. The medical records show that Brown exhibited symptoms of depression and anxiety, but had good judgment, good insight, intact impulse control and no deficits to his cognitive capacity,[11] such that he possessed an RFC to

---

[10] Notably, Brown does <u>not</u> challenge the ALJ's recitation of the medical evidence.

[11] The April 10, 2019 progress notes from Dr. McPherson (R. 663-664), which are relied upon by the ALJ, mirror Dr. McPherson's progress notes from January 19, 2019 (R. 665-666). Indeed,

perform jobs that existed in the national economy in significant numbers. The Court declines Brown's invitation to reweigh the evidence or substitute its own judgment for that of the Commissioner. *See Dyer*, 395 F.3d at 1210. Accordingly, Brown has not shown error.

**B.     The ALJ did not err in her consideration of Brown's work history.**

Brown challenges the ALJ's credibility[12] assessment on the ground that she failed to consider his stellar work history. Brown argues his "exemplary 42 years of consecutive earnings, including 23 years of service in the U.S. Army, prior to his alleged disability onset[ ]" should have informed the ALJ's credibility finding. (Doc. No. 18 at 13.) Brown contends that his long work history "lends to his credibility, not detracts from it." (*Id*. at 14.) Brown cites opinions from other district courts in support of his argument, but does not reference any opinions from the Eleventh Circuit.

---

"[p]atient with no significant changes, continued symptoms" were noted on Dr. McPherson's progress notes for two years.

[12] The Social Security Administration ceased using the term "credibility" years ago when assessing if claimant's subjective complaints are consistent with and supported by the record.

> [W]e are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.

Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *2. Because Brown employs this term in his brief, however, it is utilized here for consistency and ease of reference.

The Court agrees with Brown that the ALJ did not discuss Brown's prior work record in her evaluation of his credibility. However, the Court's agreement with Brown ends there.

"While a claimant's 'prior work record' is a consideration in evaluating a claimant's credibility, 20 C.F.R. § 404.1529(c)(3), 'the Eleventh Circuit has not [ruled that] an ALJ's failure to consider a claimant's 'lengthy and consistent work record' in evaluating a claimant's credibility is erroneous." *Mahon v. Comm'r of Soc. Sec.*, No. 8:16-cv-1462-T-JSS, 2017 WL 3381714, at *10 (M.D. Fla. Aug. 7, 2017) (citing *Lafond v. Comm'r of Soc. Sec.*, No. 6:14-CV-1001-ORL-DAB, 2015 WL 4076943, at *9 (M.D. Fla. July 2, 2015)). Although Brown cites to two cases from non-binding district courts to support his argument,[13] this Court is persuaded by other district courts within the Eleventh Circuit[14]

---

[13] The "decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citing 18 J. Moore, et al., Moore's Federal Practice § 134.02[1] [d] (3d ed. 2011)). And the decisions cited by Brown are not persuasive.

[14] Notably, in *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991), the Eleventh Circuit rejected the argument that "the ALJ should have accepted [a claimant's] testimony about her pain because she had a good work history." The Circuit stated,

> . . . Congress has set forth the conditions under which a claimant's complaints of pain may establish the existence of a disability.  42 U.S.C. § 423(d)(5)(A). This court has previously examined this section and ruled that a claimant must produce "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

*Id*.  The Circuit held that substantial evidence supported the ALJ's conclusion because the claimant "failed to meet either of the two conditions that would satisfy the second part of this test, and the ALJ was thus not required to grant [the claimant] benefits based on her complaints of pain.  *Id*.

which have found no reversible error where the ALJ did not specifically discuss the claimant's work history in the credibility analysis. *See, e.g., Brothers v. Berryhill*, No. 4:18-cv-01557-JEO, 2019 WL 3555064, at *4 (N.D. Ala. Aug. 5, 2019) (holding ALJ did not err "in determining Plaintiff's credibility without reference to his prior work ethic"); *Wilson v. Soc. Sec. Admin., Comm'r*, No. 4:18-cv-00407-JHE, 2020 WL 1285927, at *6 (N.D. Ala. Mar. 16, 2020) (finding claimant's "argument that the ALJ erred by failing to consider [his] work history is unpersuasive"); *Neff v. Saul*, No. 8:18-cv-3040-T-SPF, 2020 WL 1181952, at *5-6 (M.D. Fla. Mar. 12, 2020) (finding no reversible error where ALJ did not specifically discuss plaintiff's work history in his credibility analysis); *Henley v. Comm'r of Soc. Sec.*, No. 8:19-cv-3011-T-MAP, 2021 WL 321503, at *6 (M.D. Fla. Feb. 1, 2021) (finding no error in ALJ's credibility analysis despite not explicitly discussing plaintiff's work history); *Sickmiller v. Saul*, No. 8:19-cv-3087-SPF, 2021 WL 1186846, at *7 (M.D. Fla. Mar. 30, 2021) ("in reaching his credibility determination, the ALJ applied the correct legal standards and his findings are supported by substantial evidence … although the ALJ did not specifically discuss Plaintiff's work history in his credibility analysis"); *Coleman v. Astrue*, No. 8:11-CV-1783-T-TGW, 2012 WL 3231074, at *5 (M.D. Fla. Aug. 6, 2012) (finding "the administrative law judge's credibility determination is not deficient because she did not discuss the plaintiff's work record in the course of that determination").

---

Hence, the Circuit did not hold that a claimant's good work history must be considered in relation to a claimant's complaints of pain.

Further, Social Security Ruling ("SSR") 16-3p "provides guidance about how [the Social Security Administration ("SSA")] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. . . ." Soc. Sec. Ruling 16-3p, 82 Fed. Reg. 49462-03, 2017 WL 5180304 (Oct. 25, 2017). As previously noted, the ruling eliminates the use of the term "credibility" from the sub-regulatory policy and stresses that the ALJ "will not assess an individual's overall character or truthfulness" but instead will "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the [ALJ's] evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities . . . ." *Id*. at 49463, 49467. "Whether before or after SSR 16–3p, an ALJ may choose to discredit a claimant's testimony about his or her symptoms." *Ring v. Berryhill*, 241 F. Supp. 3d 1235, 1252 (N.D. Ala. 2017), *aff'd sub nom*. *Ring v. Soc. Sec. Admin., Comm'r*, 728 F. App'x 966 (11th Cir. 2018) (per curiam).

When evaluating a claimant's symptoms, a two-step process must be used. *Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700, 703 (11th Cir. 2018) (per curiam) (citing SSR 16-3p, 82 Fed. Reg. 49462-03 at 49463). At step one, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p, 82 Fed. Reg. 49462-03 at 49463-64. At step two, the ALJ must evaluate the intensity and persistence of the symptoms and determine the extent to which they limit the claimant's ability to perform work-related activities. *Id*. at 49464-66. In doing so, the ALJ must examine the entire case

record, including the objective medical evidence; the claimant's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the case record. *Id*. at 49464.

The ALJ also must consider the factors set forth in 20 C.F.R. § 404.1529(c)(3), including (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve his pain or symptoms other than treatment; and (7) any other factors concerning the claimant's functional limitations and restrictions due to his pain or symptoms. *Id*. at 49465-66; *see* 20 C.F.R. § 404.1529(c)(3).[15]

---

[15] In *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991), the Eleventh Circuit "articulated the 'pain standard,' which applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.' " *Id*. (quoting *Holt*, 921 F.2d at 1223). If the ALJ discredits a claimant's subjective testimony, she "must articulate explicit and adequate reasons for doing so or the record must be obvious" as to the finding. *Strickland v. Comm'r of Soc. Sec*., 516 F. App'x 829, 832 (11th Cir. 2013) (per curiam) (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). Failure to articulate the reasons for discrediting testimony related to pain or other subjective symptoms requires, as a matter of law, that the testimony be accepted as true. *Holt*, 921 F.2d at 1223. On the other hand, when the ALJ's reasons for discrediting a claimant's statements about pain or other symptoms are clearly articulated and supported by substantial evidence in the record, a reviewing court will not disturb the ALJ's findings. *Foote*, 67 F.3d at 1562.

Notably, "SSR 16-3p provides clarification of the subjective pain standard; it does not substantively change the standard" or "the factors that an ALJ should consider when examining subjective pain testimony." *Harris v. Berryhill*, Case No.: 5:16-CV-01050-MHH, 2017 WL 4222611, at *3 n.2 (N.D. Ala. Sept. 22, 2017) (internal citation omitted); *see also Griffin v.*

The ALJ then must examine the claimant's statements about the intensity, persistence, and limiting effects of symptoms in relation to all other evidence and consider whether they are consistent with the record as a whole. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018) (per curiam) (citing SSR 16-3p, 81 Fed. Reg. 14166, 14170 (Mar. 16, 2016)); *see also* 20 C.F.R. § 404.1529(c)(4).

Here, in making the RFC finding, the ALJ stated that she considered all of Brown's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. 20.) The ALJ also stated that she considered the "medical opinion(s) and prior administrative finding(s) in accordance with the requirements of 20 CFR 404.1520c." (R. 20.) The ALJ then described the two-step process required by SSR 16-3p and summarized Brown's comments from his Disability Report, Function Report, and the administrative hearing. (R. 20.) Thereafter, the ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that [Brown's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Brown's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 29.)

_____

*Berryhill*, No. 4:15-cv-0974-JEO, 2017 WL 1164889, at *6 n.10 (N.D. Ala. March 29, 2017) ("The Eleventh Circuit's pain standard is consistent with the parameters that SSR 16-3p sets forth.").

The Court finds substantial evidence supports the ALJ's decision. The ALJ evaluated various factors, including Brown's daily activities, the improvement with his sleeping, treatment records, and other factors concerning his functional limitations. *See* 20 C.F.R. § 404.1529(c)(3). The ALJ elicited testimony from Brown during the administrative hearing as to his work history (R. 42-45), the physical demands of each position (*id*.), and why he stopped working (R. 46). In addition, the ALJ considered testimony from the VE regarding Brown's past work experience. (R. 58.) Further, Brown's certified earnings record was a part of the administrative record (R. 164-166), and it is obvious from the transcript of the administrative hearing that the ALJ considered Brown's earnings record (R. 39-40). Thus, the Court finds no error in this or any other aspect of the ALJ's symptom or credibility analysis.

**C.   The removal provision of 42 U.S.C. § 902(a)(3) does not necessitate remand.**

Brown challenges the denial of benefits based on the alleged unconstitutional structure of the SSA. (Doc. No. 18 at 14-15.) Brown argues the SSA's structure violates the separation of powers due to the statutory provision governing the President's authority to remove the Commissioner, 42 U.S.C. § 902(a)(3).[16] Brown further contends that the delegation of authority from the Commissioner to the ALJ is thus constitutionally defective and his case should be remanded for a *de novo* hearing before a new ALJ.

---

[16] Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3), (the "removal provision"). Under § 902(a)(3), the SSA's Commissioner is appointed to a six-year term and may not be removed from office by the President without a showing of cause. *See* 42 U.S.C. § 902(a)(3).

First, the Commissioner agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause. (Doc. No. 20 at 13.) Notwithstanding, as the Commissioner correctly argues, that conclusion alone does not support setting aside an unfavorable SSA disability benefits determination.

Second, Brown's claim was adjudicated by an ALJ who was <u>not</u> appointed by a Commissioner subject to 42 U.S.C. § 902(a)(3)'s removal provision. The appointment of the ALJ in this case was ratified by an Acting Commissioner,[17] an officer removable at will and not subject to 42 U.S.C. § 902(a)(3)'s protection. "Although the statute unconstitutionally limited the President's authority to remove the confirmed [Commissioner], there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [administration] as void." *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021); *see also id*. at 1802 (Kagan, J. concurring) ("Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year. ... I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone .... When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

Third, "[t]here is no indication the President attempted or desired the removal of the Commissioner while this case was pending before the administration." *Finley v. Comm'r*

---

[17] (*See* Doc. No. 20 at 14.) This fact is uncontroverted. (*See* Doc. No. 25.)

*of Soc. Sec.*, No. 2:21-CV-10-JLB-NPM, 2022 WL 8211382, at *4 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted,* No. 2:21-CV-10-JLB-NPM, 2022 WL 3974329 (M.D. Fla. Sept. 1, 2022) (rejecting same argument). Brown has neither shown a nexus between the removal provision and his claim, nor has he plausibly argued that the removal provision affected the ALJ's decision or caused him harm.

For these reasons, this court holds, like its sister courts throughout the country have repeatedly held, this separation of powers argument does not warrant remand. *See Finley v. Comm'r of Soc. Sec.*, No. 2:21-CV-10-JLB-NPM, 2022 WL 8211382, at *4 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted,* No. 2:21-CV-10-JLB-NPM, 2022 WL 3974329 (M.D. Fla. Sept. 1, 2022) (collecting cases); *Clark v. Kijakazi*, No. 3:21-CV-02-KFP, 2022 WL 3756908, at *5-8 (M.D. Ala. Aug. 30, 2022); *Tracy Rhouma v. Comm'r of Soc. Sec.*, No. 4:20-cv-2823, 2021 WL 5882671, at *9-11 (N.D. Ohio Dec. 13, 2021); *Ronnie Hutchens v. Comm'r of Soc. Sec.*, No. 1:20-cv-1124, 2021 WL 5834409, at *6-14 (M.D.N.C. Dec. 9, 2021); *Michele T. v. Comm'r of Soc. Sec.*, No. 3:20-cv-06085-JRC, 2021 WL 5356721, at *3-6 (W.D. Wash. Nov. 17, 2021).  The Court finds no reversible error.

## VI.   CONCLUSION

For the above-stated reasons, the Court finds the Commissioner's decision is supported by substantial evidence and is in accordance with applicable law. Accordingly, it is hereby ORDERED as follows:

1.  The claimant's motion for summary judgment (Doc. No. 18) is DENIED.

2.  The Commissioner's motion for summary judgment (Doc. No. 20) is GRANTED.

3.  The decision of the Commissioner is AFFIRMED.

A separate judgment will be issued.

DONE this 28th day of March, 2023.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE